United States District Court
Southern District of Texas
**ENTERED**
May 11, 2023
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| DWAYNE COOPER, *et al.*, | § § § § § § § § § § § | |
| Plaintiffs. | | |
| V. | | CIVIL ACTION NO. 4:21-cv-01060 |
| PROJECT RESOURCES GROUP, INC., | | |
| Defendant. | | |

## **MEMORANDUM AND RECOMMENDATION**

Pending before me are dueling motions for summary judgment. *See* Dkts. 27–28. Having reviewed the briefing, the record, and the applicable law, I recommend that both motions for summary judgment be **DENIED**.

### **FACTUAL BACKGROUND**

Plaintiffs Dwayne Cooper ("Cooper") and Josh Noakes ("Noakes") worked for Defendant Project Resources Group, Inc. ("PRG") as field investigators. They were paid a salary for their work.

Among other things, PRG assists its customers in recovering repair costs when their gas, cable, electric, fiberoptic, or telephone lines are damaged by a third party. By way of an example, if a construction company strikes an underground utility line while excavating, PRG will help its customer (the owner/operator of the utility line) recover the repair costs from the party responsible for the damage. PRG refers to this work as Outside Plant Damage ("OPD") services.

There are three phases to the OPD investigation and recovery process. In the first phase, field investigators like Cooper and Noakes visit the damage site to take photographs and videos; interview witnesses; research and evaluate the laws, ordinances, and regulations that might be relevant; and prepare a formal investigation report for PRG's internal use. The second phase consists of the

investigation reports being submitted to an invoicing team, who then finalizes a claims damage package and issues an invoice to the entity responsible for causing the damage. In the third and final phase, a recovery team negotiates with the responsible party in an effort to maximize recovery for PRG's clients.

Cooper and Noakes allege in this lawsuit that they should have been paid overtime under the Fair Labor Standards Act ("FLSA"). As an affirmative defense, PRG asserts that Cooper and Noakes are "exempt from the FLSA's overtime requirements pursuant to the FLSA's administrative exemption." Dkt. 9 at 7. PRG seeks summary judgment, asking this Court to determine, as a matter of law, that the administrative exemption precludes Cooper and Noakes's FLSA claims. Meanwhile, Cooper and Noakes have filed their own motion for partial summary judgment. Cooper and Noakes contend that the FLSA's administrative exemption is inapplicable to the present case.

## LEGAL STANDARD

**A.     SUMMARY JUDGMENT**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute of material fact is "genuine" if the evidence would allow a reasonable jury to find in favor of the nonmovant. *See Rodriguez v. Webb Hosp. Corp.*, 234 F. Supp. 3d 834, 837 (S.D. Tex. 2017). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once satisfied, the burden shifts to the nonmovant to show the existence of a genuine fact issue for trial. *See id.* at 324. To do so, the "nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim." *Brooks v. Houston Indep. Sch. Dist.*, 86 F. Supp. 3d 577, 584 (S.D. Tex. 2015).

In ruling on a motion for summary judgment, I must construe "the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Cadena v. El Paso County*, 946 F.3d 717, 723 (5th

Cir. 2020). It is not my role to weigh the evidence or evaluate its credibility, as those are fact questions for the jury to decide. *See Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 245 (5th Cir. 2016) (holding that a district court makes an improper credibility determination when it weighs the evidence or chooses which testimony to credit and which to discard). That said, I am "not required to accept the nonmovant's conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence." *Id.* (quotation omitted).

**B. THE FLSA'S OVERTIME REQUIREMENT AND THE ADMINISTRATIVE EXEMPTION**

In 1938, Congress enacted the FLSA in an effort to ensure each employee covered by the law would receive "a fair day's pay for a fair day's work and would be protected from the evil of overwork as well as underpay." *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (cleaned up). Under the FLSA, employers must pay overtime compensation "at a rate not less than one and one-half times the [employee's] regular rate" to those employees who work more than 40 hours per week. *See* 29 U.S.C. § 207(a)(1). Employees working in a bona fide executive, administrative, or professional capacity, however, are exempt from the FLSA's overtime requirement. *See* 29 U.S.C. § 213(a)(1).

Only the administrative exemption is at issue in this case. An employee qualifies as an administrative employee—and is exempt from the FLSA's overtime pay requirement—if:

> (1) He is compensated on a salary or fee basis at a rate of not less than $684 per week;
>
> (2) His "primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and"
>
> (3) His "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance."

29 C.F.R. § 541.200(a).

The administrative exemption is an affirmative defense, and the burden of establishing the exemption rests squarely on the employer. *See Fraser v. Patrick O'Connor & Assocs., L.P.*, 954 F.3d 742, 745 (5th Cir. 2020). The U.S. Supreme Court has rejected the principle that the FLSA's exemptions should be construed narrowly against the employer and instead determined that district courts must give the exemptions a "fair reading." *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018) ("Because the FLSA gives no textual indication that its exemptions should be construed narrowly, there is no reason to give them anything other than a fair (rather than a narrow) interpretation." (cleaned up)).

"The decision whether an employee is exempt . . . is primarily a question of fact." *Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326, 330 (5th Cir. 2000). "However, the ultimate decision whether the employee is exempt from the FLSA's overtime compensation provisions is a question of law." *Id.* But to prevail on an exemption defense at the summary judgment stage, the employer must come forward with enough evidence to establish it "beyond peradventure." *Dewan v. M-I, L.L.C.*, 858 F.3d 331, 334 (5th Cir. 2017).

## ANALYSIS

The parties agree that Cooper and Noakes satisfy the administrative exemption's weekly salary requirement.[1] The dispute at the summary judgment stage centers on the second and third prongs of the administrative exemption. I must therefore address whether there is a triable issue of fact as to whether Cooper and Noakes's primary duty consisted of "the performance of office or non-manual work directly related to [PRG's] management or general business operations" (the second prong). 29 C.F.R. § 541.200(a)(2). I must also consider whether Cooper and Noakes's primary duty "include[d] the exercise of discretion and independent judgment with respect to matters of significance" (the third prong). *Id.*

---

[1] The salary requirement is $684 per week, which equates to $35,568 per year. *See* 29 C.F.R. § 541.200(a)(1). Cooper received an annual salary starting at $52,000 and rising to $57,000 by the end of his employment. Noakes received an annual salary starting at $48,000 and rising to $54,000 by the end of his employment.

4

§ 541.200(a)(3). Without belaboring the point, let me simply say that I firmly believe there are factual issues with respect to both the second and third prongs of the administrative exemption that preclude the entry of summary judgment for either side.

**Second Prong:** As far as the second prong of the administrative exemption is concerned, PRG argues that Cooper and Noakes are exempt from the FLSA's overtime pay provisions because their primary duty involved performing non-manual work directly related to the general business operations of PRG. To satisfy the second prong, "an employee must perform [office or non-manual] work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." *Id.* § 541.201(a). PRG contends that Cooper and Noakes did "not provide any end-line products or services to customers but rather simply investigate[d] damage incidents to help PRG's overall business of seeking monetary recovery for its customers when their property is damaged." Dkt. 27 at 8. Cooper and Noakes disagree. Claiming that they performed ordinary inspection work that involved well-established techniques and procedures, Cooper and Noakes maintain that their duties are part of the "production line or selling a product." 29 C.F.R. §541.201(a). In my view, it would be helpful if we had the factual record fully established at trial to allow the factfinder—and, if necessary, the judge—to properly determine whether the second prong of the administrative exemption has been met. Summary judgment is inappropriate for this reason alone.

**Third Prong:** Turning to the third prong, the focus is whether Cooper and Noakes's primary duty "include[d] the exercise of discretion and independent judgment with respect to matters of significance." *Id.* § 541.200(a)(3). "In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." *Id.* § 541.202(a). "The term

'matters of significance' refers to the level of importance or consequence of the work performed." *Id.* PRG asserts that Cooper and Noakes's job duties satisfy the third prong because "their jobs were highly analytical, . . . they were their 'own boss' with full and independent discretion as far as how to conduct their investigations, and . . . they had independent discretion to make liability determinations according to their own best judgment." Dkt. 27 at 8. Not surprisingly, Cooper and Noakes have a very different take on their job responsibilities. They claim they merely applied "well-established techniques, procedures, or specific standards described in manuals." Dkt. 28 at 21 (quotation omitted). Cooper and Noakes further assert that they "simply recorded and tabulated data while performing repetitive, recurrent, or routine work." *Id.*

Where, as here, the "limited factual record could reasonably be interpreted to provide two different understandings of the scope of the plaintiffs' discretionary authority and independent judgment," the Fifth Circuit requires such evidence to "be weighed by a jury." *Dewan*, 858 F.3d at 340. Because I cannot weigh evidence at the summary judgment stage, I am unable to "ascertain as a matter of law whether [Cooper and Noakes's] *primary* duties involved an exercise of discretion and independent judgment, as the regulations require." *Alawar v. Trican Well Serv., L.P.*, 397 F. Supp. 3d 873, 897 (W.D. Tex. 2019). Accordingly, based on the record before me, the entry of summary judgment is improper.

## CONCLUSION

There are factual disputes about whether Cooper and Noakes meet the second and third prongs of the administrative exemption. As a result, I recommend that the parties' competing motions for summary judgment be denied. This case needs to be tried before a jury.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have 14 days from receipt to file written objections under Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure

to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED this 11th day of May 2023.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE